```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Kim Stanley Kocher,            :

         Plaintiff,            :

     v.                        :      Case No.  2:14-cv-2263

                               :      JUDGE GEORGE C. SMITH
Commissioner of Social Security,      Magistrate Judge Kemp

         Defendant.            :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Kim Stanley Kocher, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. Those applications were filed on July 13, 2011, and alleged that Plaintiff became disabled on April 7, 2007.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on April 19, 2013. In a decision dated April 25, 2013, the ALJ denied benefits. That became the Commissioner's final decision on October 9, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on February 4, 2015. Plaintiff filed his statement of specific errors on March 2, 2015, to which the Commissioner responded on May 28, 2015. Plaintiff filed a reply brief on June 22, 2015, and the case is now ready to decide.

II. The Lay Testimony at the Administrative Hearing

Plaintiff, who was 50 years old at the time of the administrative hearing and who has a seventh grade education, testified as follows. His testimony appears at pages 32-45 of

the administrative record.

Plaintiff first testified that his last job was as a downtown ambassador, which required him to walk around, provide information and directions, and, in the summer, to powerwash sidewalks. He also swept sidewalks and shoveled snow in the winter. He lost that job due to missing work for medical reasons. His only other job was office cleaning, which he described as involving standing and heavy lifting.

Plaintiff had not seen a doctor for treatment at any time since 2007. His main problem was his back, although he also suffered from a chronic cough and bad knees. In a typical day, he would stay in his apartment and watch television or listen to music. He was able to cook for himself and do his own laundry.

When asked how long he could stand, Plaintiff said an hour. Sitting for more than a few hours was also a problem. He had a hernia which limited his lifting to three or four pounds.

### III.  The Medical Records

The medical records in this case are found beginning on page 245 of the administrative record. The Court will summarize those records as well as the opinions of the state agency reviewers.

The only report of an examination came from a consultative examiner, Dr. Whitehead. He saw Plaintiff on October 17, 2011. Without describing his report in detail, because the issues Plaintiff raises do not require that, Dr. Whitehead found that Plaintiff suffered from diabetes with likely diabetic neuropathy, chronic low back pain, and limited education and cognitive skills. His notes also indicated a ventral hernia which was nontender and reducible. Dr. Whitehead thought Plaintiff could perform sedentary or light duty jobs, with his standing restricted to three or four hours per day on an intermittent basis, and without any repetitive bending or lifting. (Tr. 245-47).

Two state agency reviewers considered Dr. Whitehead's report and developed similar residual functional capacity assessments. Dr. McCloud limited Plaintiff to lifting 20 pounds occasionally and ten pounds frequently, to standing or walking with normal breaks for up to four hours, to sitting for up to six hours, and to climbing ramps and stairs, stooping, kneeling, crouching, and crawling only occasionally.  Also, he did not think Plaintiff could ever climb ladders, ropes, or scaffolds, and he could not tolerate any exposure to workplace hazards.  (Tr. 61-62).  The second reviewer, Dr. Villanueva, concurred in that assessment. (Tr. 90-92).

### IV. The Vocational Testimony

Dr. Magrowski was the vocational expert in this case.  His testimony begins on page 46 of the administrative record.

First, Dr. Magrowski identified Plaintiff's past jobs as information person, a light, unskilled job; janitor or cleaner, also a light, unskilled job (at least as Plaintiff performed it); and housekeeper, a light, unskilled job (which Plaintiff performed at the medium exertional level).

Dr. Magrowski was asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level, but who could stand or walk for only four hours in a workday.  The person could occasionally climb ramps and stairs and occasionally stoop, crouch, kneel, and crawl.  The person could not climb ladders, ropes, and scaffolds and had to avoid all exposure to hazards such as the operational control of moving machinery and unprotected heights. According to Dr. Magrowski, someone with those limitations could not do any of Plaintiff's past work, but could do jobs like bench assembler, gluer or cementer, or office helper, all of which were light and unskilled.  He gave numbers for those jobs in the State and national economies.  If that same

individual were limited to sedentary work, he or she could perform unskilled jobs such as table worker, packer, or coater of brake linings.  Being off task 20% of the time would preclude gainful employment, however.

    Dr. Magrowski was then asked some questions about his response to the first hypothetical.  He said that the <u>Dictionary of Occupational Titles</u> definition of light work did not encompass those jobs, and the ALJ clarified that he did not ask about someone who could perform a full range of light work.  He also said that the ability to walk or stand for only an hour at a time, up to four hours in a workday, was not consistent with the <u>DOT</u>'s definition of light work but was consistent with sedentary work.  Finally, he told the ALJ that his testimony was consistent with the <u>DOT</u> "[e]xcept where I explained it," which he further described as "[t]he standing for four hours."  (Tr. 54).

    V.   <u>The Administrative Law Judge's Decision</u>

    The Administrative Law Judge's decision appears at pages 18-24 of the administrative record.  The important findings in that decision are as follows.

    The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 7, 2007.

    Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including disorders of the back and diabetes mellitus.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

    Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity

to work at the light exertional level, although he could stand or walk for only four hours in a workday; could occasionally climb ramps and stairs and occasionally stoop, crouch, kneel, and crawl; could not climb ladders, ropes, and scaffolds; and had to avoid all exposure to hazards such as the use of hazardous machinery, operational control of moving machinery, and unprotected heights.

The ALJ found that, with these restrictions, Plaintiff could not do any of his past relevant work.  However, he could do the three light jobs identified by the vocational expert - garment bench assembler, cementer, and office helper.  The ALJ further found that these jobs existed in significant numbers in the State and national economies.  He made an alternative finding that Plaintiff could do the three sedentary jobs described at the administrative hearing.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises three issues.  He asserts that (1) the ALJ did not properly resolve the conflict between the DOT and the vocational testimony; and (2) the ALJ did not properly account for Plaintiff's obesity.  These issues are considered under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based

upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Conflicts with the DOT

In his first statement of error, Plaintiff contends that the ALJ did not resolve the conflict which exists here between the vocational testimony and the Dictionary of Occupational Titles. He acknowledges that the ALJ asked Dr. Magrowski if there was a conflict and that one was identified - the conflict illustrated by the quoted testimony from Dr. Magrowski about the four-hour standing limitation - but that the ALJ did not, in the administrative decision, adequately address or resolve that conflict.  In response, the Commissioner argues that there was actually no conflict because the ALJ never asked Dr. Magrowski a question about someone who could perform light work as defined in the DOT.  The Court concludes that the Commissioner has the better of this argument.

Social Security Ruling 00-4p addresses the use of vocational expert testimony in disability cases.  As background, that Ruling notes that, under the applicable regulations (20 C.F.R. §§404.1566(d) and 416.966(d)), an ALJ is permitted to take

judicial notice of job information contained in publications like the DOT. However, an ALJ is also permitted to use vocational experts or specialists to obtain information on the same subjects. As a result, "[q]uestions have arisen about how [the Social Security Administration] ensure[s] that conflicts between occupational evidence provided by a VE ... and information in the DOT ... are resolved." The Ruling was published in order to address those questions.

According to SSR 00-4p, a vocational expert's testimony "generally should be consistent" with the DOT. In order to further that goal, the Ruling requires an ALJ to ask, on the record, if that consistency exists. If there is a conflict, there is no automatic preference either for the DOT or the expert testimony; rather, the ALJ "must resolve the conflict by determining if the explanation given by the VE ... is reasonable and provides a basis for relying on the VE ... testimony rather than on the DOT information." The Ruling then provides examples of why, in some cases, the expert testimony may be more reliable than the DOT, such as when the expert testimony provides information not available in the DOT or provides more specific information about jobs than the DOT does. Finally the Ruling says this about the decisional process: "The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."

Plaintiff concedes that the ALJ satisfied one of the requirements of SSR 00-4p by asking Dr. Magrowski about a conflict with the DOT. He argues, however, that the ALJ did not follow through with the analysis required by the ruling and did not explain, in his decision, how he resolved the conflict. Plaintiff asserts that without such an explanation, the ALJ was not entitled to rely on the vocational expert's testimony, and

that without such testimony, the Commissioner did not provide reliable evidence upon which to base a decision that there were jobs that Plaintiff could perform.

As this Court recently observed, "there are cases in which the testimony of a vocational expert will directly conflict with the DOT on matters like exertional or skill level for particular jobs, and there are more indirect or tangential conflicts." Anderson v. Comm'r of Social Security, 2015 WL 6468186, *4 (S.D. Ohio Oct. 27, 2015), citing Carey v. Apfel, 230 F.3d 131, 145-46 (5th Cir 2000).  This is clearly a case of, at best, a tangential conflict.  Fairly read, Dr. Magrowski's testimony suggests not that the DOT expressed different standing requirements for the three light jobs he identified, but that the DOT, which classifies jobs by exertional levels generally, simply does not address the question of whether some light jobs, for example, do not require a worker to be able to walk or stand for a total of six hours in a workday but still require lifting consistent with light work.  Thus, any conflict he identified was not with the requirements of any specific job, but rather a gap in the DOT which he was able to fill based upon his direct knowledge of the job market.

The ALJ clearly resolved, at least implicitly, any conflict here in favor of the vocational testimony.  The Court is not aware of any cases stating that the ALJ's failure to be more explicit in that resolution is an "articulation error" requiring remand.  Rather, the failure which Plaintiff points out is more like the failure to use the "adjudicatory tool" contained in §404.1520a, which, as the Court of Appeals explained in Rabbers v. Comm'r of Social Security, 582 F.3d 647, 656 (6th Cir. 2009), is a regulation which does not confer a specific procedural right upon a social security claimant.  Consequently, standard harmless error analysis applies here.  This Court is not convinced that a

-8-

remand on this issue would serve any particular purpose, especially in light of the very tangential nature of the conflict, nor would it likely result in a different outcome. For these reasons, the Court finds no merit in Plaintiff's first claim of error.

B. <u>Obesity</u>

In his second statement of error, Plaintiff argues that, although the record clearly indicates that he is obese (his body mass index was measured at 46), the ALJ did not acknowledge this impairment or take it into account in determining his residual functional capacity. In the memorandum in opposition, the Commissioner contends that because Dr. Whitehead's report is the only medical record here, and the one which points out Plaintiff's obesity, and because the ALJ generally adopted Dr. Whitehead's opinion as to Plaintiff's functional limitations, the ALJ adequately accounted for any restrictions caused by Plaintiff's obesity.

There is no mention of obesity in the ALJ's decision. Plaintiff cites to <u>Norman v. Astrue</u>, 694 F.Supp. 2d 738 (N.D. Ohio 2010) as an example of a case which ordered a remand for the mere failure to consider obesity. There, however, the ALJ did not discuss how obesity might have affected the plaintiff's degenerative disc disease or how it impacted his ability to sustain physical activity over time. Further, the Court concluded that "the ALJ appears to have analyzed Norman's limitations not as they actually existed, but rather from the hypothetical standpoint of what Norman's limitations would be if he lost weight as recommended by his physicians." <u>Id</u>. at 749. No such error appears in this case. Rather, the record does not contain any indication that Plaintiff's obesity - which both Dr. Whitehead and the state agency physicians were aware of - imposed any functional limitations beyond the ones reported by those physicians and adopted by the ALJ. Simply put, when "there is no

-9-

evidence in the record, of any functional limitations as a result of .. obesity that the ALJ failed to consider," a remand for further resolution of this issue is unnecessary.  See Burch v. Barnhart, 400 F.3d 676, 684 (9th Cir. 2005); see also Pepper v. Colvin, 712 F.3d 351, 365 (7th Cir. 2013)("this type of error may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments").  Thus, there is no merit in Plaintiff's second statement of error.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d

947 (6th Cir. 1981).

                                              /s/ Terence P. Kemp
                                              United States Magistrate Judge